UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID C. JOHNSON,**

        **Plaintiff,**                                Case No. 2:12-cv-100
                                                        JUDGE GREGORY L. FROST
       **v.**                                                   Magistrate Judge Norah McCann King

**CITY OF PATASKALA,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court for consideration of a motion for summary judgment (ECF No. 19) filed by Defendant, the City of Pataskala ("Pataskala" or "the City"), a memorandum in opposition (ECF No. 22) filed by Plaintiff, David C. Johnson, and a reply memorandum (ECF No. 23) filed by Pataskala. For the reasons set forth below, the Court **GRANTS** Pataskala's motion for summary judgment.

**I. Background**

Plaintiff, David C. Johnson, began working for Defendant, the City of Pataskala, in 2004. Johnson was eventually promoted to the position of Maintenance Utility Superintendent, a position that included management of water plant maintenance, the supervision of other employees, and preparing Operating Reports for the Ohio Environmental Protection Agency ("Ohio EPA"). One of the requirement for Johnson's position was that he hold a valid Ohio EPA Class II Water Management Certification, which would enable him to submit monthly operational reports for the City's water plant that the Ohio EPA requires. Johnson held this certification when he was hired and when he was promoted.

1

In October and November 2010, the Ohio EPA notified Pataskala that the City had failed to timely submit its operational reports. Pataskala City Administrator therefore counseled Johnson during a December 13, 2010 performance assessment that Johnson needed to improve the Ohio EPA reporting. In February and March 2011, however, Pataskala against received notification of failure to timely submit the operating reports and to either issue a consumer notice or provide information to the Ohio EPA that such a notice had been issued. In April 2011, Boland placed a Memorandum into Johnson's file related to Johnson's failure to fulfill these job duties. No improvement followed, and Johnson in fact eventually stopped submitting the reports to the Ohio EPA.

Pataskala then received notice from the Ohio EPA in May 2011 that Johnson had allowed his Class II Water Management Certification to lapse. One of the employees whom Johnson supervised, Eric Winkler, had similarly allowed his Class I Certification to lapse. Johnson failed to act to renew his own certification and failed to discipline or ensure that Winkler kept his certification current.

In a May 19, 2011 letter, the Law Director for the City notified Johnson that he would be placed on paid administrative leave as of May 23, 2011. Pataskala then held a pre-disciplinary meeting on May 26, 2011, at which Johnson took full responsibility for failing to renew his Ohio EPA certification. After Johnson declined the invitation to submit his resignation, the City terminated his employment effective June 11, 2011.

After obtaining permission to sue from the Equal Employment Opportunity Commission in January 2012, Johnson filed the instant action on February 1, 2012. In a two-count complaint he asserts federal and state claims for disability discrimination related to his alcoholism. (ECF

2

No. 1.) The City has filed a motion for summary judgment on all of Johnson's claims, which is ripe for disposition. (ECF No. 19.)

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

In his first claim, Johnson asserts disability discrimination in violation of Ohio Revised Code 4112, while in his second claim, he asserts disability discrimination under the Americans with Disabilities Act ("ADA").  Neither party argues here that an action for disability discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the ADA.  Thus, "because Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, [this Court] will analyze plaintiff's state and federal discrimination claims . . . solely under the ADA." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 936 (6th Cir. 2000) (noting that Ohio case law seems to support the proposition that the ADA analysis applies to an Ohio claim of disability discrimination).  The Sixth Circuit has employed such an analytic approach in disability discrimination litigation involving similar federal and state claims.  *See Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012).

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a *prima facie* showing of disability-based discrimination under the ADA, a plaintiff must establish:

> 1) that he or she is disabled; 2) is otherwise qualified for the job, with or without "reasonable" accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination, the position remained open or the individual was replaced.

*Leeper v. Verizon Wireless*, No. 2:08-cv-0727, 2009 WL 5062097, at *3-4 (S.D. Ohio Dec. 16, 2009) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (internal citations omitted)).  Pataskala argues that it is entitled to summary judgment because Johnson cannot make a *prima facie* showing.

4

There is no dispute over the first element. The ADA defines disability, with respect to an individual, as a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). Pataskala concedes that the fact that Johnson is an alcoholic and that this condition meets the ADA definition of a disability. Therefore, for purposes of this Opinion and Order, the Court assumes *arguendo* that Johnson is considered disabled under the ADA.

Also not in dispute is the third element, which is whether Johnson suffered an adverse employment action, the fourth element, which is whether Pataskala knew of Johnson's alcoholism, and the fifth element, which is whether Johnson was replaced after his termination. For purposes of its motion only, the City essentially concedes these points while maintaining that Johnson's termination was wholly unrelated to his disability.

The second element, whether Johnson is a qualified individual under the ADA, is in dispute. That statutory scheme defines a "qualified" individual as

> [a]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Thus, Johnson can be considered "otherwise qualified" to be a Maintenance Utility Superintendent only if he is able to perform the essential functions of that position.

5

The City argues that, regardless of any accommodation, Johnson was not otherwise qualified because he lacked the requisite Ohio EPA certification necessary to hold his position and fulfill its essential duties. Evidence in the record supports this proposition.

Johnson's job required the certification. A copy of the Maintenance Utility Superintendent job description that Johnson had signed thus provides that possessing "all relevant EPA certificates regarding treatment facilities" was a minimum requirement for entry to the position. (ECF No. 18-1, at Page ID # 182.) Additionally, Johnson states in his deposition that such certification was a requirement for applying for the Maintenance Utility Superintendent position and that, in order for him to obtain the position, he had to confirm with Pataskala that he held the Ohio EPA certification. (ECF No. 18-1, at Page ID # 163.) When asked whether he understood that maintaining the certification was an ongoing job requirement, however, Johnson responded, "I guess it wasn't in the forefront of my mind." (*Id.*) He subsequently testified that he assumed that he had to keep his certification up to date. (*Id*. at Page ID # 166.)

This assumption was correct. Holding the required certification is a requirement for submitting reports to the Ohio EPA. *See* Ohio Admin. Code 3745-7-02(A). Because Johnson's certification had lapsed–and despite the fact he was still within a period permitting renewal when terminated–Johnson was unable to function as the operator of record of a public water system and could not perform those activities requiring certification. *See* Ohio Admin. Code 3745-7-15(D)(9) & (I). Johnson's lack of certification therefore defeats his being regarded as a qualified individual.

The instant case is thus similar to *Kinneary v. City of New York*, a case in which the Second Circuit Court held that a sludge boat captain whose captain's license had expired was not

6

an "otherwise qualified" individual and therefore could not make a claim under the ADA. 601 F.3d 151, 157 (2d Cir. 2010). Federal regulations subjected Kinneary, a captain employed by the city Department of Environmental Protection, to random drug testing. *Id*. at 152-53. During a drug test in 2001, he could not provide a sample within the time limit despite "drinking water like crazy." *Id*. The Coast Guard filed a complaint against Kinneary alleging that he refused to submit to the drug test, and his license was suspended. *Id*. at 154. The Department of Environmental Protection fired him for not possessing the requisite captain's license. *Id*. at 155.

Kinneary filed suit under the ADA claiming that he was fired as a result of paruresis (shy bladder syndrome). *Id*. at 153. The Second Circuit held that because Kinneary could not act as a captain without his captain's license, he could not perform an essential function of his job. *Id*. at 156. Because Kinneary could not perform an essential function of his job, he was not considered a qualified individual and could not make a claim under the ADA. *Id*. at 157. The Sixth Circuit has endorsed this analysis in disability discrimination claims in which credentialing, or holding a license or certification, is a requirement of a plaintiff's position. See *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d at 432.

Similar to the *Kinneary* scenario, this case involves the failure to hold a required certification precluding a plaintiff from meeting the elements of his claims. An essential part of being Maintenance Utility Superintendent is submitting the Ohio EPA reports, which in turn requires holding the requisite certification. Johnson was unable to submit the reports because he had let his certification expire. Therefore, Johnson could not perform an essential function of his position and was consequently not a qualified individual under the ADA or analogous state law.

Johnson disagrees. He argues that he was able to perform the essential functions of his job and asserts that the City does not terminate employees without his disability for the reason it terminated him. Neither contention precludes summary judgment here.

The evidence before this Court establishes Johnson's alcoholism, his ongoing efforts to battle that condition while employed with Pataskala, and his apparently obtaining sobriety in April 2011. It also establishes that Johnson let his certification lapse during that time. He asserts, however, that this did not mean that he was not otherwise qualified for his job, with or without an accommodation. Johnson reaches this position by arguing that the renewal of his certification was not an essential job requirement and that, even if it were, he should have been permitted to continue in his job with the accommodation that the City give him additional time in which to renew his certification.

This Court disagrees with the suggestion that holding a valid certification was not an essential component of Johnson's job. He concedes that the lack of a valid certification meant that he could not sign off on reports as the operator of record, but Johnson then dismisses that fact by asserting that other individuals could and did sign off on the reports. His theory is that the filing of reports was part of his job but not the point of his job. In other words, Johnson argues that his inability to fulfill his duties does not mean that he could not do his job because other individuals could have performed his duties for him.

But as the City correctly points out, a qualified individual must satisfy any requisite job-related requirements *and* be able to perform his or her essential job functions, with or without an accommodation. *See* 29 C.F.R. § 1630.2(m) ("The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and

other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position."). These are *two* requirements. Johnson failed to meet the first requirement (satisfying the requisite skill, experience, education and other job-related requirements of the employment position), regardless of whether signing off on and filing reports was an essential job function.

The fact that another individual later became qualified to do what Johnson could not or that an individual was able to fill in for Johnson during his extended absences for treatment and after his certification expired does not invalidate the certification requirements of his job or what Johnson's job entailed. His attempt at shifting the focus only to what he can attempt to explain away is therefore unpersuasive. It is also unusual, as Pataskala suggests, that Johnson's "assertion that he could simply rely on his subordinates to fulfill his own Certification requirements is a silly notion to [the City]. [Johnson] himself was required to maintain all relevant Certifications–it would seem counterintuitive to require a subordinate to meet higher qualifications than a supervisor." (ECF No. 23, at Page ID # 616.)

Equally unpersuasive is Johnson's argument that the City should have provided him with an accommodation such as extending the time in which he could renew his certification following his completion of treatment for alcoholism. Johnson never requested such an accommodation until after his certification had lapsed, after he fell below the minimum criteria to hold his position, after he was unable to fulfill an essential function of his job, and after he was in the disciplinary process. Johnson thus wanted an accommodation after he was already not "otherwise qualified" to hold his position.

9

Finally, Johnson cannot evade summary judgment by asserting that other individuals who lacked his disability were treated differently for the same conduct for which he was terminated. His reliance on the fact that one of his subordinates lacked a certification and that the City did not terminate that employee but imposed lesser discipline is unpersuasive because that individual was not an operator of record when his certification lapsed. This distinguishes that employee from Johnson, as does the fact that the subordinate employee had informed his supervisor of the certification lapse, whereas Johnson hid his lapse until the City brought it to his attention. Similarly, the fact that Johnson's supervisor was not disciplined for Johnson's failure to maintain certification does not point to disability discrimination. Johnson knew his subordinate lacked certification and did nothing. Johnson's supervisor learned that Johnson lacked certification and held disciplinary proceedings that resulted in Johnson's termination. Different circumstances produced different treatment, which undercuts the vitality of Johnson's premise.

No reasonable juror could infer from the evidence, even as construed in Johnson's favor, that Pataskala engaged in conduct amounting to disability discrimination. Johnson has failed to point to a cause and effect in which any action by the City could reasonably be construed as discriminating against him. He has failed to present a *prima facie* case for his discrimination claims, and even if it is assumed he has and burden shifting would become applicable, the City has presented a legitimate, non-discriminatory rationale for its decision to terminate his employment that Johnson fails to puncture. Pataskala is therefore entitled to summary judgment.

### III. Conclusion

For the foregoing reasons, this Court **GRANTS** Pataskala's motion for summary judgment. (ECF No. 19.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE